■Read, J.
The whole question in this case depends upon the validity of the mortgage to Collins and McElroy.
The retention of possession on the part of the mortgagor is only a badge of fraud, which may bo removed by showing the transaction was honest. We regard it to be perfectly well-settled law, that on a sale or mortgage of personal property a continuance of possession by vendor or mortgagor, is only prima facia evidence of fraud, which may bo explained away or rebutted by showing that such possession was honest and fair.
But a continuance of possession, with a power of disposition and sale, either express or implied, is'quite a different thing. Such is the character of the mortgage under consideration. Myers, Collins, and McElroy had been partners in merchandising. On dissolution Myers assumed the debts of the firm, and to secure Collins and McElroy from responsibility, executed to them a mortgage of the entire stock in trade and such additions as might be made thereto, to retain possession of the stock for the ordinary purpose of barter *and sale, until the retiring partners should be compelled to pay some of the debts thus indemnified, or should become fearful that they would have to pay any or all of the debts of the late firm, when they might take possession and dispose of the stock thus mortgaged in the manner provided, and apply the proceeds to the discharge of the firm debts.
The object of a mortgage is to obtain a security beyond a simple reliance upon the honesty and ability of the debtor to pay, and to guard against the risk of all the property of the debtor being swept off by other creditors by fastening a specific lien upon that covered by the mortgage.
But a mortgage with possession and power of disposition in the mortgagor, is nothing at last but a reliance upon the honesty of the mortgagor, and in fact is no security, as it is within the power of the mortgagor, at any moment, to defeat the mortgage lien by an entire disposition of the whole property covered by the mortgage. Such a mortgage, then, is no security, so far as the debtor is concerned, and is of no benefit except as a ward to keep off other creditors. True, it may furnish a more specific remedy for the collection of the debt, but is not a specific and certain security at its inception. To hold such a mortgage valid, would enable a debtor to do business upon a capital within the limits of the mortgage debt at the will of the mortgagor, protected from all claims *465 of other creditors; and in the present instance upon a capital of indefinite amount, as the mortgage is to extend to all additions to be made to the stock in trade. To hold that such a mortgage was valid, would furnish a complete shelter under which a man could carry on trade for his own benefit, completely protected against the payment of his debts, and placed wholly beyond the reach of creditors. That the mortgagee should thus permit the mortgagor to transact business for his own benefit, and not proceed to collect the mortgage debt, would not be evidence of fraud which would authorize the mortgage to be defeated, upon the ground that it hindered or delayed creditors, because the mortgage may have been honestly executed, and simple generosity or *good nature, or carelessness, in delaying the collection of a debt, could not be regarded as a fraud which would defeat an honest security.
The very nature of a mortgage is to fasten a lien upon specific property; and the court have gone far enough when they have permitted an honest possession in the mortgagor, because that opens up a door by which an honest vendee may be defrauded, by purchase without notice,.which shows that there was much reason in the rule established in the old case of Twyne. Butin this case there is no specific lien, but a floating mortgage, which attaches, swells, and contracts, as the stock in trade changes, increases and diminishes, or may wholly expire by entire sale and disposition, at the will of the mortgagor. Such a mortgage is no certain security upon specific property; it all depends upon the honesty and good faith of the debtor; and as he might dispose of it to a creditor at will, to satisfy a debt, we see no reason why a creditor might not seize it against his will, for the same object. In such ease the whole right to dispose of the property to pay a debt, depends upon the will of the debtor, not affected by the rights of the mortgagor; and what reason is there in permitting the will of the debtor to determine whether property shall legally go to pay a debt or not? If it be the will of the debtor to appropriate the mortgaged property to pay tho debt, it is binding as against the mortgagee ; but if it be not the will of the debtor, and the property is seized upon execution, the rights of the mortgagor fastens upon the property, and takes it away from the execution creditor. Then the property is not held by the mortgage, but the will of the debtor; because, if the debtor sees proper to dispose of it, he has the power under the mortgage. He may dispose of *466 the property, defeat the mortgage, and put the money in his own pocket; but if he refuses to pay a debt, and you seize the property in execution against his will, the mortgage steps in and restores it to the debtor. The whole matter, then, appears to rest upon the option of the debtor to appropriate the mortgaged property to the payment *of his debts or not, and not upon the mortgage. No reasoning will change this result, if a mortgagor retains possession and the full power of disposition over the mortgaged property.
A mortgage upon a specific article, with possession and power of disposition left in the mortgagor, is, in truth, no mortgage at all; it is no certain lien. The power to hold possession and dispose of the property, is inconsistent with the very nature of a mortgage. It indeed would not, perhaps, be going too far to say that such an instrument was a nullity. It is next thing to a sale of a horse, with possession and power of disposition retained to the vendor. Except in the case of a mortgage, it would be contended that a time might happen when the mortgagee could assert possession ; but before condition broken and possession taken, it would be hard to discover any difference. But at all events we have not the slightest hesitation in saying that a mortgage which secnre3 possession and the full power of disposition in the mortgagor until condition broken, will not hinder creditors from seizing property thus mortgaged on execution, and applying the proceeds to the payment of debts. Nor will it prevent the mortgagee from assigning to pay debts, for he has the power of disposition by the instrument itself. As to all the world exeej)t as to the parties themselves, such a mortgage will be held void, as against the policy of the law.
But many respectable authorities have been cited, to show that ■a mortgage of a stock of goods, with power to sell, is valid. ¥o are-not disposed to adopt either their reasoning or conclusions. It is said by Judge Story, in support of a fact of this sort, that although the articles mortgaged may be sold that others may be substituted in their place, and this may be done by consent of parties. This is no answer, for it may be that others will not be substituted, and if we look to experience, in all cases, where a trader has felt himself bound to mortgage his whole stock, it is not the usual result.
The whole error in these cases appears to be in regarding *467 *the word stock as a fixed thing, which must always remain, the same as a horse which preserves its identity, although in the process of time every particle composing him may be thrown off and renewed. And that the power of disposition in the mortgagor of stock in trade, is only the power to sell the old and replace it with new, and thus keep up the identity of the thing mortgaged, and then claim that such a mortgage is only the common case of a mortgage of a specific thing, with possession in the mortgagor until condition broken. The error is in treating a word as a thing, and mortgaging a word instead of a substance, and permitting the substance to be sold, while the mortgage attaches and remains fixed to the word. Except in the case of sale and resupply, or wear and resupply, with identity preserved under the noun stock, there is no confusion in the books. Because it is not held anywhere that a mortgage of a specific thing, as a horse, with possession and power of disposition in the mortgagor, is valid against creditors. But the word stock has been treated as permanent and fixed, and the power of disposition as attaching to the goods which made up the stock, and that the stock must necessarily be resupplied as fast as consumed.
Wo need not, under this view, consider whether the mortgage could attach to future additions to be made to the stock, or subsequent acquisitions, as no additions in this case were ever made, and if made, they would not have been protected by the mortgage—the mortgage itself being void as against creditor or purchaser.
Hence the court, in holding that this mortgage would not prevail against execution creditors, or against Caldwell & Mc-Cracken, assignees for the benefit of creditors, held rightly.
Demurrer sustained; bill dismissed.